## Losee *versus* Bissell.

1. The defendant endorsed a note payable to the order of McFarland, on his request and assurance that it was a mere matter of form, and he would not negotiate it. The defendant's endorsement was in law, on the condition that McFarland should assume the position of first endorser.

2. McFarland presented the note to the plaintiff, who discounted it, with defendant's endorsement and McFarland's *under* it. This was distinct and unequivocal evidence on its face that it had not been negotiated in the ordinary course of business.

3. For McFarland to negotiate the note without first endorsing it, would be fraud on the defendant, and was sufficient to put the plaintiff upon inquiry, which would have shown there was no consideration for it, and McFarland was negotiating against his agreement.

4. Endorsement by McFarland, after discount but before maturity, would not establish the bona fides of McFarland.

5. Endorsements may be filled up in full or stricken out on the trial, so as to conform to the declaration.

6. If there had been no defence between the defendant and McFarland his endorsement might have been made on the trial.

7. To determine the character of the endorser as a bonâ fide holder for value without notice, the time when he parts with the money is the important fact.

8. If at the time the holder parts with his money the paper is on its face irregular, out of the usual course of business, its effect cannot be prevented by afterwards putting it into a regular shape.

October 20th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Crawford county*: Of October and November Term 1873, No. 43.

On the 22d of January 1872, George H. Bissell & Co. commenced an action of assumpsit against Jessie A. Losee, as endorser of a note drawn by Eugene L. Smith, payable to John D. McFarland, dated January 15th 1870, for $625 with interest and payable in nineteen months.

At the same time a similar note payable in two years for $1250 was given; after they fell due suit was brought on each. Both suits were tried together by order of the court. The question on this writ of error relates to the $625 note only.

The cases were tried January 24th 1873, before Lowrie, P. J.

The plaintiff gave in evidence the notes having endorsed on them first the name of McFarland, then that of Losee, and then that of McFarlan: and rested. The defendant testified that there were no endorsements on the notes when he endorsed them. Being cross-examined, he testified that in December 1869, he sold his store in Titusville to McFarland (the payee), Smith (the maker), and Shugert. That McFarland said all matters were fixed, but that Smith had no endorser, and that he did not want to let Smith have the money to pay for his part of the store without one. That Shugert had his mother for an endorser, and would think him

(McFarland) partial unless he required Smith to have one also. That he only wanted him to endorse as a matter of form, as he would have Smith in the store with him and he could pay it himself. That he did not want to negotiate the notes. That McFarland was not present when defendant afterward endorsed the notes. The defendant called John D. McFarland (the payee) who testified:

" On the $625 note I put my endorsement under Losee when I first endorsed. I owned it then. I think I put the upper one on when I got it discounted. I think I put it on before due. The upper endorsements were not made at the same time on both notes. On the other note, my endorsement was made at the bank. The $625 note I don't recollect endorsing above after due, my recollection is to the contrary, though not certain. I never endorsed a note after it was protested. It was discounted for me by the bank, both of them. Originally I left them as collateral of my own paper. They were discounted before either of them fell due. The bank had it some time before I signed over Losee. Couldn't say who was present. Mr. Ray, the cashier, called my attention to it, and I wrote my name above. Had discounted the notes. Had an arrangement with the bank for paper of my own. Had got the money."

The defendant then gave in evidence the protest of the $625 note. McFarland became insolvent before the notes became due.

The copy of the note contained in the certificate of protest was as follows:—

" $625.          Titusville, Pa., January 15th 1870.

Nineteen months after date I promise to pay to John D. McFarland, or order, Six Hundred and Twenty-five Dollars, at 2d National Bank, with interest from date. Value received.

EUGENE L. SMITH.

Endorsed " J. A. Losee, Jno. D. McFarland.    J. E. Ray, Cashier."

The court charged :—

" Very probably it was intended, in making the notes, that the defendant should be surety of Smith by endorsement to McFarland ; but, if so, the parties drew them wrong, making McFarland instead of the defendant, the payee, and therefore the first endorser.

" But the suit is by the endorsees, and on the face of the notes they are entitled to recover from the defendant as an endorser, if there has been due demand and notice, and if there be no other defence.

" Even if McFarland first pledged the notes to the plaintiffs as collateral without his first endorsement and afterwards endorsed them and had them discounted by the plaintiffs, or endorsed them after discount and before they fell due, this does not prevent the plaintiffs from recovering from the defendant.

" But if McFarland did not endorse the second note ($625) as

[Losee v. Bissell.]

payee until after it had fallen due, the plaintiffs cannot recover on that; for they took it tainted with an apparent irregularity. As the note then stood, the defendant appeared as a mere accommodation endorser for the use of McFarland, if he should use it regularly and in the usual course of business before it should become due, and by regular endorsement.

"McFarland thinks he did so endorse it; but the certificate of protest indicates the contrary and is strong evidence that he did not."

The jury found for the plaintiff $1482.11.

The defendant took a writ of error; his second assignment of error was:—

The court erred in charging the jury: "Even if McFarland first pledged the notes to the plaintiffs as collateral, without his first endorsement, and afterwards endorsed them and had them discounted by the plaintiffs; or endorsed them after discount and before they fell due, this does not prevent the plaintiffs from recovering from the defendant."

*Roe Reisinger* and *B. J. Reed* (with whom was *A. B. Richmond*), for plaintiff in error.—The defendant's position was that of second endorser, and the plaintiffs could only recover in the character of innocent holders for value, without notice, having taken the notes in the usual course of business by regular endorsement: Herrick *v.* Carman, 12 Johns. 160; Taylor *v.* McCune, 1 Jones 466; Schollenberger *v.* Nehf, 4 Casey 191; Fegenbush *v.* Lang, Id. 194; Barto *v.* Schmeck, Id. 450; Schafer *v.* Farmers' and Mechanics' Bank, 9 P. F. Smith 148; Eilbert *v.* Finkbeiner, 18 Id. 247.

*Guthrie & Byles*, for defendants in error, cited Kyner *v.* Shower, 1 Harris 446; Eilbert *v.* Finkbeiner, 18 P. F. Smith 247.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 4th 1875.

It appeared by the evidence that the defendant below had endorsed his name on the back of a note drawn to the order of McFarland, at his, McFarland's, request, and upon the assurance that it was a mere matter of form, and he would not negotiate it. The defendant's endorsement was in law upon the condition that McFarland should assume the position of first endorser: Schafer *v.* Farmers' and Mechanics' Bank, 9 P. F. Smith 148. At the time it was first presented to the plaintiffs for discount, it may have been in that position, and if it was, it bore on its face distinct, unequivocal evidence that it had not been negotiated in the ordinary course of business. To make such negotiation, it should have appeared that McFarland had endorsed to Losee, and Losee

[Losee *v.* Bissell.]

back again to McFarland, in whose hands the note was when it was offered for discount. But the most important link in the chain was wanting—the first endorsement by McFarland. For him to negotiate the note without such endorsement was to attempt a fraud on Losee, and it was of itself sufficient to put the plaintiff upon inquiry. Such inquiry would have developed the fact that there was no consideration as between McFarland and Losee, and that McFarland was negotiating the note contrary to his express agreement. The learned judge below thought that if the endorsement by McFarland was made after discount and before maturity, it established the bona fides of the endorsel; but not after maturity. Why not? Bissell & Co. had notice of the irregular character of the paper when they took it, and if that can be helped by putting it afterwards into regular shape, it might be done as well after maturity as before. Endorsements may be filled up in full or stricken out on the trial, so as to conform to the declaration. If there had been no defence as between McFarland and Losee, the endorsement in question might have been made on the trial. But to determine the character of the endorsee as a bonâ fide holder for value without notice, the point of time at which he parts with his money is the important fact. If the paper was then on its face irregular—out of the usual course of business—the effect of that knowledge on the endorsee could not be prevented by subsequently putting it in a regular shape. We think, therefore, that the second assignment of error must be sustained.

Judgment reversed, and a *venire facias de novo* awarded.